```
                       16 MAG        8365
Approved:   _____
            Hagan Scotten
            Assistant U.S. Attorney

Before:     THE HONORABLE BARBARA C. MOSES
            United States Magistrate Judge
            Southern District of New York
```



- - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : **SEALED COMPLAINT** |
|  | : Violations of |
| - v. - | : 18 U.S.C. §§ 922(g)(1), |
|  | : 924(b), and 2 |
| DARYL CAMPBELL, | : COUNTY OF OFFENSE: |
| a/k/a "Taxstone" | : New York |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

       JOSE FLORES, being duly sworn, deposes and says that he is a Detective with the New York City Police Department (the "NYPD"), and charges as follows:

### COUNT ONE
(Possession of a Firearm by a Convicted Felon)

       1. On or about May 25, 2016, in the Southern District of New York and elsewhere, DARYL CAMPBELL, a/k/a "Taxstone," the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess, in and affecting commerce, a firearm, to wit, a black 9mm Kel-Tec semiautomatic handgun.

       (Title 18, United States Code, Sections 922(g)(1) and 2.)

### COUNT TWO
(Receipt of a Firearm in Interstate Commerce)

       2. Between in or about October 2015 and on or about May 25, 2016, in the Southern District of New York and elsewhere, DARYL CAMPBELL, a/k/a "Taxstone," the defendant, with the intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, and with knowledge

and reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year was to be committed therewith, shipped, transported, and received a firearm in interstate and foreign commerce, to wit, CAMPBELL received a black 9mm Kel-Tec semiautomatic handgun with the intent of committing therewith the firearms crime charged in Count One.

(Title 18, United States Code, Sections 924(b) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Detective with the NYPD's Manhattan South Homicide Squad. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

4. I have reviewed records concerning the criminal history of DARYL CAMPBELL, a/k/a "Taxstone," the defendant. From these records I have learned that on or about February 14, 2008, in Kings County Supreme Court, CAMPBELL pled guilty to Attempted Robbery in the Second Degree, a felony punishable by more than one year imprisonment. Accordingly, following that conviction and at all times relevant to this Complaint, CAMPBELL was prohibited from possessing a firearm.

5. From my review of publicly available media generated by or containing recordings of DARYL CAMPBELL, a/k/a "Taxstone," the defendant, I have learned, in substance and in part, that:

a. CAMPBELL is a commentator on music and other matters, who, among other things, regularly releases a commercially available podcast and appears in interviews.

b. In his public statements, CAMPBELL has proclaimed his membership in the Bloods, a violent street gang, and his willingness to use violence and firearms.

2

c. In his public statements, CAMPBELL had on multiple occasions prior to May 25, 2016 insulted an individual in the music industry ("Individual-1"), by stating, among other things, that Individual-1's music is of a poor quality, that Individual-1 is cowardly and unwilling to use violence, and that Individual-1 attempted to manufacture a reputation for both musical and criminal accomplishments that was inflated or false.

d. In one public statement CAMPBELL made prior to May 25, 2016, CAMPBELL identified Individual-1 by Individual-1's stage name and proclaimed his willingness to open fire if a group of men were to approach him, repeatedly saying "try me." Specifically, CAMBELL stated, in substance and in part:

> I can protect myself as a man, so I'm not thinking about rolling with six goons . . . That's why I be telling people you failed before you even think you won with me. Because you thinking you walking up with six dudes is gonna do something to me. When I see you walking up with six dudes, bang-ba-ba-ba-ba-ba-ba [making sound of gun rapidly firing] . . . I ain't with it, I ain't with all that six dudes walking up trying to have a conversation with me about nothing. . . . That's why I be laughing at rappers. Rappers, I don't care about you. I'm a tell you, try me. I want, I want the rappers to try me. I do. I ain't gonna lie. I want y'all to try me. Try me. Your shooter, the tough nigga in your squad that just came home. Tell 'em try me. I want to embarrass somebody. And that's why I started bullying [Individual-1's stage name], you know what I mean?

6. I have reviewed video recordings, law enforcement reports, and medical reports, and spoken with eyewitnesses concerning a fatal shooting (the "Shooting") that occurred on or about the night of May 25, 2016 in the vicinity of 17 Irving Plaza, New York, New York, from which I have learned, in substance and in part, that:

a. The Shooting began in a room (the "Room") within a commercial venue (the "Venue") used for musical performances. At or near the time of the Shooting, there was a physical struggle inside the Room, which was filled with a crowd of people present for a scheduled musical performance.

b. Four shots were fired inside the Room:

3

           i. One shot struck Ronald McPhatter, a/k/a "BSB Banga," in the chest, at close range, killing McPhatter.

           ii. One shot struck Individual-1 in both legs, wounding Individual-1.

           iii. One shot struck an uninvolved bystander, wounding that individual in the leg.

           iv. One shot passed through the floor of the Room and struck a second uninvolved bystander, who was on the lower level of the Venue, wounding that individual in the stomach.

      7. I have reviewed video recordings made at the Venue on the night of the Shooting, showing an individual I believe to be DARYL CAMPBELL, a/k/a "Taxstone," the defendant, entering the Room prior to the Shooting, and leaving the Room immediately after the Shooting.

      8. I have reviewed reports produced by an NYPD firearms expert showing that all four shots fired in the Room were fired from a black 9mm Kel-Tec semiautomatic handgun (the "Firearm") that was subsequently recovered by, and is currently in the possession of, the NYPD.

      9. I have reviewed a report concerning the Firearm prepared by a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. From this report I have learned that the Firearm was manufactured outside the state of New York, and that the Firearm was lawfully purchased in Florida by the Firearm's original owner (the "Owner").

      10. I have spoken with the Owner, who confirmed that the Owner originally purchased the Firearm in Florida. The Owner further stated, in substance and in part, that the Owner left the Firearm with another person ("Individual-2"), who later told the Owner that Individual-2 had brought the Firearm to New York in or about October 2015.

      11. I know from my review of social media, including photographs depicting the two together, among other evidence, that Individual-2 is an associate of DARYL CAMPBELL, a/k/a "Taxstone," the defendant.

12.     I have reviewed reports produced by the New York City Office of Chief Medical Examiner. From those reports I have learned, in substance and in part, that:

    a.     DNA found on the Firearm connects the Firearm to DARYL CAMPBELL, a/k/a "Taxstone," the defendant. Specifically:

        i.     DNA found on the trigger and trigger guard of the Firearm contained a mixture of DNA, and it is 8.8 billion times more probable that this DNA came from CAMPBELL and two other people, rather than three people not including CAMPBELL.

        ii.    DNA found on the hand grip of the Firearm contained a mixture of DNA, and it is 112 billion times more probable that this DNA came from CAMPBELL and two other people, rather than three people not including CAMPBELL.

        iii.   DNA found on the base edges of the magazine[1] of the Firearm contained a mixture of DNA, and it is 2.28 billion times more probable that this DNA came from CAMPBELL and two other people, rather than three people not including CAMPBELL.

    b.     DNA recovered from the Firearm also indicates that McPhatter (who, as discussed above, was fatally shot during the Shooting) and Individual-1 (who, as discussed above, was shot and wounded during the Shooting) touched or handled the Firearm prior to its recovery by the NYPD. Specifically:

        i.     DNA found on the edges of the Firearm's slide[2] contained a mixture of DNA including DNA from both McPhatter and Individual-1.

        ii.    The mixture of DNA found on the trigger and trigger guard of the Firearm is 5,760 times more probable to

---

[1] The magazine of a semiautomatic handgun such as the Firearm is a detachable portion of the weapon into which bullets to be fired from the weapon are loaded.

[2] The slide of a semiautomatic handgun such as the Firearm is the top portion of the weapon, which moves backward then forward ("slides") when the weapon is fired.

5

have come from Individual-1 and two other people, than from a mixture of people not including Individual-1.

13. Based on my training and experience, and in particular my experience with firearms and firearms crimes, the locations on the Firearm where DNA attributable to DARYL CAMPBELL, a/k/a "Taxstone," the defendant, was located indicates that CAMPBELL possessed the firearm before the Shooting began. In particular, in addition to the presence of CAMPBELL's DNA on the trigger and handle (consistent with having fired the weapon), CAMPBELL's DNA was present on the base edges of the magazine, which is a location someone would not necessarily touch when briefly grabbing or even firing a handgun, but would more often touch when loading a firearm.

14. I have reviewed video recording the exit to the Room immediately after the Shooting. In that video I have observed, among other things, McPhatter fleeing the room, followed by DARYL CAMPBELL, a/k/a "Taxstone," the defendant, followed by Individual-1. That video shows, in part, that when emerging from the Room, Individual-1 (who had visibly been shot in the legs) is now holding a handgun later identified as the Firearm. Individual-1 is seen in the video aiming the Firearm in the direction in which CAMPBELL had fled and firing a single shot.[3]

15. I know from my review of social media, my conversations with individuals familiar with the music industry, and my conversations with individuals familiar with Individual-1, that Ronald McPhatter was a professional and personal associate of Individual-1, and that McPhatter's alias, "BSB Banga," was derived from the name of Individual-1's music production company, "BSB Records."

---

[3] From my conversations with other NYPD Officers and my review of law enforcement reports, among other things, I know that the NYPD seized the Firearm during the search of a van (the "Van") conducted on or about May 26, 2016. The Firearm was found hidden with two other handguns that, unlike the Firearm, do not appear connected to CAMPBELL. I know from interviews with multiple witnesses that the Van was used to, among other things, transport Individual-1 to a hospital after the Shooting.

6

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of DARYL CAMPBELL, a/k/a "Taxstone," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
JOSE FLORES
Detective
NYPD

Sworn to before me this
December 29, 2016

_____
THE HONORABLE BARBARA C. MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK